TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| COOPERATIVA DE SEGUROS MÚLTIPLES DE PUERTO RICO Y OTROS<br><br>PETICIONARIOS<br><br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS<br><br>RECURRIDOS | KLCE202500395 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br><br>Caso Núm. MZ2024CV01467<br><br>Sobre: Impugnación de Confiscación |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 22 de mayo de 2025.

### I.

El 14 de abril de 2025, Oriental Bank and Trust (Oriental Bank o parte peticionaria) presentó ante nos la *Petición de Certiorari* en la que solicitó que revoquemos una *Resolución* dictada por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI o foro primario) el 19 de marzo de 2025, notificada digitalmente el 20 de marzo de 2025.[1]

En el aludido dictamen, el TPI declaró No Ha Lugar una *Solicitud de Sentencia Sumaria* radicada por la parte peticionaria y resolvió que la parte peticionaria no cumplió, en esa etapa de los procedimientos, con los requisitos estatutarios para que le sea aplicable la doctrina de tercero inocente ante la confiscación realizada por el Estado Libre Asociado de Puerto Rico, et al. (Estado o parte recurrida) sobre un vehículo de motor gravado por un préstamo de venta al por menor autorizado por la parte peticionaria.

---

[1] Apéndice de la Petición de *Certiorari*, Anejo 16, págs. 131-146.

El 23 de abril de 2025, emitimos una *Resolución* en la que le concedimos al Estado un término de diez (10) días para exponer su posición sobre la expedición del auto de *certiorari*.

Transcurrido el término para que la parte recurrida compareciera sin que lo hiciera, damos por perfeccionado el recurso y, en adelante, pormenorizaremos los hechos atinentes a la controversia.

**II.**

El caso de marras tuvo su génesis el 28 de agosto de 2024 cuando la Cooperativa de Seguros Múltiples de Puerto Rico (Cooperativa de Seguros Múltiples) y Oriental Bank presentaron una *Demanda* en la que alegaron que el 16 de agosto de 2024, fechada el 9 de agosto de 2024 y enviada por correo postal el 12 de agosto de 2024, fueron notificadas por el Estado, por conducto de la Junta de Confiscaciones, que el 19 de julio de 2024 la Policía de Puerto Rico confiscó el vehículo de motor marca Hyundai modelo Tucson del año 2020 tablilla JSD-868, por ser empleado para infringir el Art. 404 de la *Ley de Sustancias Controladas*, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA sec. 2404 (Ley Núm. 4-1991).[2] A su vez, según se desprende del documento, el valor de tasación adjudicado al vehículo confiscado por la Junta de Confiscaciones fue de dieciséis mil dólares ($16,000.00).[3] Dicho vehículo consta registrado a nombre de la señora Wanda Ivonne Sepúlveda Torres (señora Sepúlveda Torres) en el Registro de Vehículos del Departamento de Transportación y Obras Públicas de Puerto Rico. Cónsono con lo anterior, mencionaron que el 28 de agosto de 2021 Oriental Bank suscribió un contrato de venta condicional con la señora Sepúlveda Torres con respecto al vehículo confiscado, por lo que estaba gravado por un préstamo autorizado

---

[2] Íd., Anejo 1, págs. 1-10.
[3] Íd., Anejo 1, pág. 5.

por la parte peticionaria. A su vez, expusieron que dicho vehículo tenía una póliza de seguro expedida por la Cooperativa de Seguros Múltiples en favor del vehículo confiscado. Por tanto, argumentaron tener legitimación activa para impugnar la confiscación. Asimismo, plantearon que la Cooperativa de Seguros Múltiples tenía un interés propietario en el vehículo confiscado. Consecuentemente, arguyeron que eran terceros inocentes, toda vez que tomaron las medidas cautelares e impartieron las instrucciones necesarias para prevenir que el vehículo confiscado fuera utilizado durante la comisión de actividades delictivas. Asimismo, indicaron que no fueron debidamente notificadas acerca de la confiscación por lo que era nula e ineficaz la confiscación. Incluso, cuestionaron la razonabilidad del monto por el cual fue valorado el vehículo confiscado.

El 11 de septiembre de 2024, la parte peticionaria y la Cooperativa de Seguros Múltiples radicaron conjuntamente una *Moción de consignación de fianza* en la que consignaron una fianza (Fianza Núm. 0028552) expedida por Antilles Insurance Company por la suma de dieciséis mil dólares ($16,000.00), el cual fue el valor de la tasación adjudicada por el Estado.[4] A su vez, solicitaron que el TPI autorizara la fianza para que el Estado le devolviese el vehículo a la parte peticionaria. Por otro lado, le suplicaron al foro primario que previo a la celebración de la vista de legitimación activa, le ordenara a la Junta de Confiscaciones que no dispusiera del vehículo.

El 11 de septiembre de 2024, notificada el 17 de septiembre de 2024, el TPI emitió una *Orden* en la que declaró No Ha Lugar la solicitud de la parte peticionaria y la Cooperativa de Seguros Múltiples en cuanto a la devolución del vehículo confiscado por

---

[4] Íd., Anejo 2, págs. 37-39.

consignar la fianza requerida.[5] Además, el foro primario denegó lo solicitado hasta que se celebrara la vista de legitimación activa y para determinar la razonabilidad del valor adjudicado.

Tras diversos incidentes procesales, el 1 de noviembre de 2024, el Estado presentó la *Contestación a la Demanda* en la que negó los argumentos esbozados por la parte peticionaria y la Cooperativa de Seguros Múltiples.[6] Subsiguiente, argumentó que la confiscación fue realizada en el ejercicio del deber ministerial conferido por el Art. 2 de la *Ley Uniforme de Confiscaciones de 2011,* Ley Núm. 119 de 12 de julio de 2011, según enmendada, 34 LPRA sec. 1724 (Ley Núm. 119-2011). En esa línea, la parte recurrida arguyó que la parte peticionaria carece de legitimación activa para impugnar la confiscación sobre el vehículo de motor en controversia tras no tener un derecho propietario sobre dicho vehículo. Además, destacó que Oriental Bank y la Cooperativa de Seguros Múltiples no son acreedores condicionales.

Así las cosas, el 6 de noviembre de 2024, el TPI emitió y notificó una *Orden de vista de legitimación activa* en la que ordenó que el 10 de febrero de 2025 comparecieran las partes para la celebración de una vista, de forma digital, acerca de la legitimación activa de la parte peticionaria y la Cooperativa de Seguros Múltiples.[7]

Luego de varios trámites procesales, el 10 de febrero de 2025, notificada digitalmente el 14 de febrero de 2025, el TPI emitió una *Sentencia Parcial* en la que acogió la solicitud de desistimiento presentada por la Cooperativa de Seguros Múltiples durante la celebración de la vista de legitimación activa.[8] Consecuentemente,

---

[5] Íd., Anejo 3, págs. 45-46.
[6] Íd., Anejo 6, págs. 49-56.
[7] Íd., Anejo 7, pág. 57.
[8] Íd., Anejo 10, pág. 68.

decretó el archivo, sin perjuicio, de la causa de acción en cuanto a la Cooperativa de Seguros Múltiples.

Simultáneamente, notificada digitalmente el 14 de febrero de 2025, el foro primario emitió una *Resolución y Orden* en la que indicó que, durante la vista de legitimación activa, fueron admitidos los siguientes exhibits ofrecidos por la parte peticionaria:

> Exhibit I- Carta de notificación de confiscación.
> Exhibit II- Certificado de Título.
> Exhibit III- Póliza de Seguros Múltiples y endoso de confiscación a favor de Oriental.[9]

Asimismo, durante la vista de legitimación activa, el ELA expresó que no tenía objeción en reconocerle legitimación activa a la parte peticionaria. Por tanto, el TPI resolvió que Oriental Bank tenía legitimación activa para impugnar la confiscación del vehículo de motor en cuestión.

El 20 de febrero de 2025, la parte peticionaria radicó una *Solicitud de Sentencia Sumaria* en la que arguyó que no existía controversia en cuanto a que el vehículo confiscado tenía un gravamen mobiliario a favor de la parte peticionaria.[10] Ello, en virtud de que la parte peticionaria y la dueña registral suscribieron un contrato de préstamo de venta al por menor. Además, razonó que el referido contrato era uno condicional, es decir a corto plazo. En esa línea, Oriental Bank aclaró que llevó a cabo las advertencias requeridas para que no se empleara el vehículo de motor para fines ilícitos. Cónsono con lo anterior, Oriental Bank alegó que en el referido contrato constaban las advertencias previamente mencionadas. Incluso, anejó una declaración jurada de una empleada en la que detalló las condiciones del préstamo, dentro de las cuales se encuentra no incurrir en delitos. Por tanto, la parte peticionaria razonó que le aplicaba la doctrina de tercero inocente toda vez que tomó las medidas cautelares e impartió las debidas

---

[9] Íd., Anejo 11, pág. 69.
[10] Íd., Anejo 12, págs. 70-90.

advertencias en ley acerca del uso del vehículo de motor para propósitos delictivos y era un acreedor condicional. En fin, solicitó al TPI que, al no existir controversia real sustancial de hechos, debía ordenar la devolución del vehículo de motor confiscado, declarar Ha Lugar la *Demanda* y cancelar la fianza consignada.

El 11 de marzo de 2025, la parte recurrida presentó *Oposición a la Solicitud de Sentencia Sumaria* en la que argumentó que Oriental Bank no había derrotado la presunción en torno a la legalidad de la confiscación.[11] Además, alegó que la parte peticionaria no presentó una *Querella* previo a la fecha de confiscación. Asimismo, sostuvo que no le era de aplicación la doctrina de tercero inocente y que existían controversias de hechos en cuanto a la aplicabilidad de dicha doctrina. En esa línea, destacó que uno de los requisitos de la doctrina de tercero inocente es que el dueño registral haya cedido el uso del vehículo de motor, y que dicho vehículo fue robado o apropiado ilegalmente, lo cual no ocurrió en este caso. Incluso, el Estado argumentó que, para que le sea adjudicable la doctrina de tercero inocente, debe versar sobre un arrendamiento a corto plazo de un vehículo de motor. Contrario a lo alegado por la parte peticionaria, el contrato suscrito entre esta y la dueña registral era un préstamo para una compraventa y, por consiguiente, la parte peticionaria no podía atribuirse el uso de la doctrina de tercero inocente. Subsiguientemente, ripostó que la declaración jurada presentada por la parte peticionaria no era suficiente para persuadir al TPI que le era atribuible la doctrina de tercero inocente. En fin, sostuvo que la parte peticionaria no cumplió con la Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3 puesto que no presentó evidencia que derrotara la

---

[11] Íd., Anejo 14, págs. 109-124.

presunción de legalidad de la confiscación y que demostrara que le asistía el beneficio de la doctrina de tercero inocente.

El 19 de marzo de 2025, notificada digitalmente el 20 de marzo de 2025, el TPI emitió una *Resolución*[12] en la que formuló los siguientes hechos incontrovertidos:

> 1. Según la carta de notificación de la confiscación, el Estado Libre Asociado de Puerto Rico, a través de la Policía de Puerto Rico, ocupó el 19 de julio de 2024, un vehículo de motor marca Hyundai, modelo Tucson, del año 2020 y con tablilla JSD868, el cual aparece registrado a nombre de la Sra. Wanda Ivonne Sepúlveda Torres en el Registro de Vehículos del Departamento de Transportación y Obras Públicas de Puerto Rico (DTOP).
> 2. La unidad fue tasada en dieciséis mil dólares ($16,000).
> 3. Según carta de notificación de la confiscación, mediante la ocupación del vehículo se alega que se violentó el Artículo 404 de la Ley de Sustancias Controladas, Ley de Sustancias Controladas, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA sec. 2101 *et. seq.*, en hechos alegadamente ocurridos en la jurisdicción del municipio de Lajas en el mismo día de la ocupación.
> 4. Según carta de notificación de la confiscación, el 31 de julio de 2024 fue emitida la Certificación de Inspección de Vehículos de Motor preparada por el Negociado de Investigaciones de la Policía de Puerto Rico.
> 5. La Orden de Confiscación fue emitida el 1 de agosto de 2024.
> 6. Según carta de notificación de la confiscación tiene fecha del 9 de agosto de 2024 y se envió a Oriental Bank and Trust, con acuse de recibo a la demandante el 12 de agosto de 2024.
> 7. Según el Anejo 3 en la Moción de Sentencia Sumaria, Certificación de título, el vehículo está registrado a nombre de la Sra. Wanda Ivonne Sepúlveda Torres, con un gravamen registral a favor de Oriental Bank and Trust, toda vez que el contrato de venta condicional a plazos fue debidamente inscrito.
> 8. Según el Anejo 2 y 3 de la Sentencia Sumaria, Certificado de Título y Contrato de Venta al por Menor a Plazos, la compra de dicho vehículo fue financiado a través de Oriental Bank and Trust, el 28 de agosto de 2021 mediante el contrato de venta al por menor a plazos suscrito por la Sra. Wanda Ivonne Sepúlveda Torres. Dicho contrato fue debidamente inscrito en el Departamento de Transportación y Obras Públicas según surge de la certificación provista. Por tanto, dicha unidad posee un gravamen registral a favor de Oriental Bank and Trust.
> 9. Al momento de la ocupación, el vehículo confiscado pertenecía a la Sra. Wanda Ivonne Sepúlveda Torres, deudor del préstamo otorgado por Oriental Bank and Trust.[13]

También, formuló los siguientes hechos que estaban en controversia:

> 1. Si la parte demandante es un tercero inocente.
> 2. Si existe o no la comisión de delito.
> 3. La legalidad o ilegalidad de la confiscación efectuada.

---

[12] Íd., Anejo 16, págs. 131-146.
[13] Íd., págs. 135-136.

4. El nexo entre la comisión de delito y el vehículo confiscado.[14]

Como parte de su análisis, el TPI destacó la siguiente cláusula en el contrato de compraventa:

"El COMPRADOR mantendrá el Vehículo libre de toda clase de reclamaciones y gravámenes y no cederá ni transferirá su interés en este Contrato o en el Vehículo, ni sus derechos asociados a Póliza de Seguros o Contratos de Servicio para los cuales se incluye algún cargo en este contrato [...] ni traspasará la posesión del vehículo excepto con el consentimiento escrito del vendedor. [...] La transferencia del Vehículo o de la propiedad aquí gravada sin el previo consentimiento escrito del VENDEDOR no transferirá derecho alguno a favor del tercero. El COMPRADOR se obliga a conservar el vehículo en perfectas condiciones, con excepción del desgaste normal por uso y a cumplir con todas las leyes, reglamentos u ordenes de cuerpos gubernamentales aplicables. [...] El COMPRADOR no usará el Vehículo ilegal ni impropiamente no lo alquilará (a menos que así se consigne en este contrato) y no lo removerá de la jurisdicción del Estado Libre Asociado de Puerto Rico".[15]

En virtud de la citada cláusula contractual, el TPI razonó que no le era aplicable la doctrina de tercero inocente porque el contrato suscrito entre esta y la dueña registral no era un préstamo de venta a corto plazo; es decir, no fue una venta condicional. A su vez, resolvió que una institución financiera que otorga financiamiento mediante un contrato de venta condicional no era dueña de un vehículo, aun cuando fuera poseedora de un gravamen sobre el vehículo en garantía del préstamo. Por ende, declaró No Ha Lugar la *Solicitud de Sentencia Sumaria* radicada por la parte peticionaria.

Inconforme con la determinación, Oriental Bank recurrió ante este tribunal y le imputó los siguientes errores al TPI:

Primer error: Erró el Tribunal de Primera Instancia al no conceder la Solicitud de Sentencia Sumaria y resolver que no le es de aplicación la doctrina de tercero inocente a Oriental Bank & Trust por no considerarlo como "Dueño" de la propiedad confiscada cuando la aludida doctrina protege tanto al propietario como al tenedor de un interés legal o económico.

Segundo error: Erró el Tribunal de Primera Instancia al no conceder la Solicitud de Sentencia Sumaria y resolver que no es de aplicación la doctrina de tercero inocente cuando en su Resolución de forma expresa reconoció que Oriental Bank & Trust tomó las medidas cautelares expresas en el contrato

---

[14] Íd., pág. 136.
[15] Íd., pág. 144.

de venta al por menor a plazos ya que se advertía que no se podía utilizar el mismo en contra de la ley.

Tercer error: Erró el Tribunal de Primera Instancia al no conceder la Solicitud de Sentencia Sumaria y resolver que Oriental Bank & Trust no era un tercero inocente, a tenor con los hechos particulares del caso, en donde la dueña registral y quien firmó el contrato de venta al por menor a plazos fue la imputada del delito, cuando el acreedor no consintió de forma alguna al uso ilegal de la unidad y tomó las medidas cautelares expresas en el contrato de prevenir dicha conducta.

En apretada síntesis, argumentó que, en el presente caso, la dueña registral y el acreedor con gravamen inscrito pueden levantar la defensa de la doctrina de tercero inocente. Empero, Oriental Bank alegó que cumplió en efectuar expresamente las medidas cautelares para evitar el uso ilegal de la propiedad para la comisión de un delito. Ante ello, la parte peticionaria aludió que las advertencias estaban descritas en el contrato de compraventa. Incluso, la parte peticionaria sostuvo que no consintió a que el vehículo fuera utilizado para cometer varios delitos. Consecuentemente, al tener un interés propietario sobre el vehículo confiscado, expresar la prohibición del uso del vehículo de motor para actividades ilícitas en el contrato y estar ajeno a la actividad delictiva cometida utilizando el vehículo de motor, le asiste el derecho de levantar la defensa de tercero inocente.

**III.**

**A.**

El auto de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC,*** 194 DPR 723, 728 (2016). Es en esencia un recurso extraordinario por el cual se solicita a un tribunal de mayor jerarquía la corrección de un error cometido por el tribunal inferior. Íd., pág. 729. Una característica distintiva del auto de *certiorari* es que se asienta en la discreción delegada al tribunal revisor para autorizar su expedición y adjudicación. ***IG Builders et al. v.***

**BBVAPR**, 185 DPR 307, 338 (2012). No obstante, nuestra discreción debe ejercerse de manera razonable, y siempre procurar lograr una solución justa. **Torres Martínez v. Torres Ghigliotty**, 175 DPR 83, 98 (2008).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece las instancias en las que el foro revisor posee autoridad para expedir el auto de certiorari sobre materia civil.[16] **Scotiabank de Puerto Rico v. ZAF Corp. et al.,** 202 DPR 478 (2019). A su vez, dicha regla sufrió varios cambios fundamentales encaminados a evitar la revisión judicial de aquellas órdenes o resoluciones que dilataban innecesariamente el proceso pues pueden esperar a ser revisadas una vez culminado el mismo, uniendo su revisión al recurso de apelación. **Medina Nazario v. McNeil Healthcare LLC,** supra. En esa línea, el rol de este foro al atender recursos de *certiorari* descansa en la premisa de que es el foro de instancia quien está en mejor posición para resolver controversias interlocutorias y con el cuidado que debemos ejercer para no interrumpir injustificadamente el curso ordinario de los pleitos que se están ventilando en ese foro. **Torres Martínez v. Torres Ghigliotty**, supra.

Si el asunto comprendido en el recurso de *certiorari* está en

---

[16] Esta Regla dispone que:

>        [....]
>        El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>        Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, entonces este foro ejerce un segundo escrutinio. Este se particulariza por la discreción que se le ha sido conferida al Tribunal de Apelaciones para expedir, autorizar y adjudicar en sus méritos el caso. Para poder ejercer de manera razonable y prudente la facultad discrecional concedida, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40, establece los criterios que debemos tener ante nuestra consideración al atender una solicitud de expedición de un auto de *certiorari*.[17]

**B.**

La Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1, establece que:

> Una parte que solicite un remedio podrá presentar, en cualquier momento después de haber transcurrido veinte (20) días a partir de la fecha en que se emplaza a la parte demandada, o después que la parte contraria le haya notificado una moción de sentencia sumaria, pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada.

La sentencia sumaria es un mecanismo procesal disponible para resolver controversias en donde no se requiere la celebración de un juicio. ***Ramos Pérez v. Univisión***, 178 DPR 200, 213 (2010). Con este mecanismo procesal se facilita la solución justa, rápida y económica de los litigios civiles cuando éstos no presentan

---

[17] Esta Regla dispone lo siguiente:
El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

controversias genuinas de hechos materiales y, por tanto, no ameritan la celebración de un juicio en su fondo. ***Luan Invest. Corp. v. Rexach Const. Co.***, 152 DPR 652, 655 (2000). La parte que promueve la sentencia sumaria debe demostrar su derecho con claridad y que no existe controversia sustancial sobre algún hecho material. ***González Aristud v. Hosp. Pavia***, 168 DPR 127 (2006). Sin embargo, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. ***PFZ Props., Inc. v. Gen. Acc. Ins. Co.***, 136 DPR 881, 911-912 (1994). Por su parte, la Regla 36.2 de Procedimiento Civil, *supra*, R. 36.2, dispone que la parte promovente deberá establecer, con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia. Además, según la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3, tendrá que desglosar, en párrafos numerados, los hechos respecto a los cuales aduce que no existe disputa, así como especificar la página o párrafo del documento que sirva de apoyo a su alegación.

La persona que se oponga a que se dicte sentencia sumaria debe controvertir la prueba presentada y está obligada a contestar de forma detallada y específica aquellos hechos pertinentes para demostrar que existe una controversial real y sustancial que debe dilucidarse en el juicio. ***Ramos Pérez v. Univisión***, supra, pág. 215; ***Corp. Presiding Bishop CJC of LDS v. Purcell***, 117 DPR 714 (1986). Es decir, el promovido ante una solicitud de sentencia sumaria tiene el deber de controvertir la prueba presentada por la parte promovente de la moción. Este no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten

los hechos materiales en disputa. Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3; **SLG *Zapata Berríos v. JF Montalvo***, 189 DPR 414 (2013); **Ramos *Pérez v. Univisión***, supra. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". **Flores *v. Municipio de Caguas***, 114 DPR 521, 525 (1983).

En otros términos, de existir controversias de hechos que impiden dictar una sentencia sumaria, el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos en la moción en oposición, así como los que obren en el expediente del tribunal. **Cruz *Marcano v. Sánchez Tarazona***, 172 DPR 526, 550 (2007). Entretanto, la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, dispone que:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno.

La aplicación de la antedicha regla procede cuando: (1) no se dicta sentencia sumaria sobre la totalidad del pleito, (2) no se conceda todo el remedio solicitado y (3) se deniega la moción de sentencia sumaria presentada. **Pérez *Vargas v. Office Depot.,***  203 DPR 687, 696-697 (2019). En las mencionadas circunstancias el tribunal deberá consignar los hechos sobre los cuales no existe controversia, por ser innecesario pasar prueba sobre estos durante el juicio. **Pérez *Vargas v. Office Depot.,***  supra, pág. 696-697. Por

ende, lo dispuesto en la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, es exigible cuando se deniega total o parcialmente una moción de sentencia sumaria. ***Pérez Vargas v. Office Depot Inc.,*** supra, pág. 704. El TPI está facultado para declarar la moción "sin lugar" pero tomará ciertas providencias que facilitaran la tramitación ulterior del litigio. R. Hernández Colon, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed.rev, LexisNexis, 2017, pág. 322. El propósito de consignar los hechos controvertidos como los incontrovertidos es relevar a las partes de pasar prueba sobre estos últimos durante el juicio en su fondo. ***Pérez Vargas v. Office Depot Inc.,*** supra, pág. 704. Al celebrarse el juicio, se consideraran probados los hechos así especificados y se procederá de conformidad. ***Rosario v. Nationwide Mutual***, 158 DPR 775, 779 (2003).

De otra parte, en ***Meléndez González et al. v. M. Cuebas***, 193 DPR 100, 118-119 (2015), el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria. En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. ***Meléndez González et al. v. M. Cuebas***, supra, pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd. En segundo lugar, prescribió que el Tribunal de Apelaciones

deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. Íd. En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. Íd. En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. Íd., pág. 119.

## C.

La Ley Núm. 119-2011, *supra* sec. 1724 *et seq.*, regula todo procedimiento de impugnación de confiscación de vehículos de motor realizados por el Estado. A su vez, el proceso de confiscación será uno independiente de cualquier proceso de naturaleza penal, civil o administrativa que se pueda llevar contra el dueño o poseedor de los bienes ocupados. Art. 8 de la Ley Núm. 119-2011, *supra* sec. 1724e. A su vez, se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos. Art. 15 de la Ley Núm. 119-2011, *supra* sec. 1724l.

Por otro lado, la jurisprudencia ha desarrollado normas para proteger los derechos de aquellos que tienen un interés económico o propietario en el vehículo confiscado y no han estado involucrados en la actividad criminal que motiva la confiscación. ***First Bank, Univ. Ins. Co. v. E.L.A.,*** 156 DPR 77, 83 (2002). Cónsono con lo anterior, se les conoce terceros inocentes a las personas

previamente descritas. Íd. Los derechos del dueño del vehículo y su aseguradora bajo un contrato de venta condicional podrían ser considerados terceros inocentes si se establecen los elementos que acreditan dicha condición. Íd. Debe demostrarse: 1) que el propietario no puso el vehículo voluntariamente en posesión del que cometió el crimen, o 2) que se tomaron medidas cautelares expresas para evitar el uso ilegal del bien. ***General Accident Ins. Co. v. E.L.A.***, 137 DPR 466, 472-473 (1994). Si el dueño o poseedor no obtuvo la posesión de manera voluntaria o si se apartó sustancialmente de las medidas cautelares o de las instrucciones expresadas de quien entregó dicha posesión o uso, entonces es que tanto el vendedor condicional o cualquier otro con interés en el vehículo de motor es un tercero condicional. ***First Bank, Univ. Ins. Co. v. E.L.A.,*** supra, pág. 84. El que levante la defensa de tercero inocente debe demostrar que no consintió a la entrega voluntaria de la posesión de su vehículo a la que incurrió en la conducta criminal y por la cual se confisca la propiedad***. Coop. Seg. Múlt. v. E.L.A***., 180 DPR 655, 667 (2011). Sobre este particular, el Art. 25 de la Ley Núm. 119-2011, *supra* sec. 1724v, dispone lo siguiente:

> **No estará sujeto a confiscación un vehículo alquilado a corto plazo por una empresa acreditada, el cual es usado en la comisión de un delito en que por ley se autorice la confiscación, a menos que el Estado pruebe la existencia de un vínculo delictivo entre el dueño del vehículo y la persona que lo alquile o lo maneje. Se entenderá que un vehículo ha sido alquilado a corto plazo cuando dicho alquiler no exceda de un período total de tres (3) meses, incluyendo las renovaciones, extensiones o modificaciones del contrato de alquiler**. Para que una empresa acreditada como de alquiler de vehículos pueda levantar esta defensa, deberá haber verificado que el arrendador del vehículo, cuando sea una persona natural, era un conductor autorizado conforme a las leyes del Estado Libre Asociado de Puerto Rico. Dicha empresa incluirá en el expediente de la unidad arrendada, una fotografía de la persona a quien se le entregó el vehículo o una fotocopia inequívocamente clara de la licencia de conducir que lo cualifica como un conductor autorizado, conforme a las leyes del Estado Libre Asociado de Puerto Rico. Dichos expedientes, incluyendo las fotografías, estarán disponibles para la inspección de cualquier funcionario estatal o federal como parte de una investigación. Tampoco estará sujeto a confiscación un vehículo que haya sido robado o apropiado ilegalmente, a menos que el Estado pruebe la existencia de

un vínculo delictivo entre el dueño del vehículo y la persona que lo robó o se apropió del mismo ilegalmente. Cuando no proceda la confiscación por las circunstancias antes expuestas, en la acción penal o in personam que se lleve contra el infractor, al dictar sentencia, el Juez impondrá como pena adicional al convicto del delito la responsabilidad de pagar, a favor del Estado Libre Asociado de Puerto Rico, el monto de la tasación del mismo al dictarse sentencia. El Tribunal ordenará que se notifique la sentencia al Departamento de Justicia y al Departamento de Hacienda para que, de ser necesario, soliciten la ejecución de la misma, según lo dispuesto en las Reglas de Procedimiento Civil, según enmendadas. (Énfasis nuestro).

En esencia, el acreedor condicional y el dueño del vehículo de motor confiscado, al igual que el dueño, tienen autoridad y pueden demandar para impugnar la confiscación que llevó a cabo el Estado. ***Negrón v. Srio. de Justicia***, 154 DPR 79, 88 (2001).

Adviértase que el Tribunal Supremo ha resuelto que, aunque en los contratos de venta condicional el vendedor retiene un título formal de propiedad hasta que el bien se haya pagado en su totalidad, el comprador del bien es, en términos legales y prácticos, el dueño del mismo. ***Berríos v. Tito Zambrana Auto***, 123 DPR 317 (1989).

**IV.**

En el recurso de marras, la parte peticionaria impugna una *Resolución* del TPI en la que decretó que no procede la *Solicitud de Sentencia Sumaria* debido a que no le asiste la defensa de la doctrina de tercero inocente. El foro primario resolvió que el contrato de compraventa suscrito entre Oriental Bank y la dueña registral del vehículo confiscado, no es un contrato de venta condicional a corto plazo. Es decir, el TPI razonó que Oriental Bank no era un acreedor condicional en relación con el préstamo que grava el vehículo de motor confiscado. Por tanto, resolvió que no procede el argumento levantado por la parte peticionaria en cuanto a que es un tercero inocente.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, a la luz de los criterios

esbozados en la Regla 52.1 de Procedimiento Civil, *supra,* y en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* resolvemos que debemos abstenernos de ejercer nuestra función revisora y rechazar intervenir con la determinación del TPI, en esta etapa de los procedimientos. Un examen sosegado del expediente del caso ante nuestra consideración y de la determinación recurrida, no arroja error alguno que amerite nuestra intervención. Por el contrario, el foro primario cumplió con la normativa vigente, aplicable a la disposición de mociones de sentencia sumaria, toda vez que basó sus fundamentadas determinaciones de hechos en los argumentos de las partes, en la prueba presentada por estas y en la documentación disponible en el expediente del caso.

Además, el TPI formuló palmariamente los hechos en controversia que le impidieron disponer sumariamente del caso, en esta etapa, toda vez que el contrato de compraventa en cuestión es de **venta al por menor y no a corto plazo**. Consecuentemente, no le es de aplicación la doctrina de tercero inocente. Tampoco, intervendremos con la discreción del foro primario en esta etapa de los procedimientos.

## V.

Por los fundamentos pormenorizados, se deniega la expedición del auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones